733 A.2d 453

AWACS, INC. T/A COMCAST METROPHONE, PLAINTIFF–RESPONDENT, v. CLEMONTON ZONING BOARD OF ADJUSTMENT, DEFENDANT–APPELLANT.

Argued May 3, 1999—Decided June 30, 1999.

*Douglas M. Joyce* argued the cause for appellant (*Cahill, Wilinski and Rhodes,* attorneys; *Peter M. Rhodes,* of counsel).

*Robert A. Gleaner* argued the cause for respondent (*Mr. Gleaner,* attorney; *Mr. Gleaner* and *Jeffrey S. Walters,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

Like *New Brunswick Cellular Co. v. South Plainfield Board of Adjustment,* 160 *N.J.* 1, 733 *A.*2d 442 (1999), also decided today, this appeal questions whether a board of adjustment was arbitrary, capricious or unreasonable in denying a use variance requested by a telecommunications carrier for a monopole and a

related building. The Clementon Board of Adjustment ("Board") denied the variances sought by AWACS, Inc. t/a Comcast Metrophone ("Comcast"). The Law Division reversed. In an unreported opinion, the Appellate Division affirmed the judgment of the Law Division. While the Board's petition for certification was pending, we issued our decision in *Smart SMR of New York, Inc. v. Fair Lawn Board of Adjustment*, 152 *N.J.* 309, 704 *A.2d* 1271 (1998). Subsequently, we granted the Board's petition, and remanded this matter to the Appellate Division for reconsideration in light of the *Smart* opinion. 153 *N.J.* 46, 707 *A.2d* 150 (1998). Again in an unreported opinion, the Appellate Division affirmed its original judgment. We granted the Board's petition for certification. 157 *N.J.* 577, 725 *A.2d* 688 (1998). We now reverse the judgment of the Appellate Division, and remand the matter to the Board.

I.

On August 10, 1995, Comcast applied to the Board for a use variance, a bulk variance and site plan approval to construct a 100 foot tall monopole communications tower and a 456 square foot equipment building on part of a 4.4 acre lot in Clementon's B–2 commercial zone. The site adjoins the White Horse Pike and is near both a residential zone and a home improvement center.

In support of its application, Comcast presented the following witnesses: its real estate manager, Steven Durst; a radio frequency (RF) engineer, Ron Morris; a health physicist, Alice Fahy–Elwood; and a civil engineer and surveyor, Andrew Missey. The real estate manager explained that Comcast is in the business of providing cellular phone services in the area, and that it is licensed to do so by the Federal Communications Commission (FCC).

Through the RF engineer, Comcast presented a map demonstrating an inadequacy of "signal strength" in the area. The engineer explained that the proposed monopole would improve Comcast's service without interfering with other parts of its system. He also testified that to serve its purpose, the monopole

needed to be at least 100 feet high. The engineer noted that for systems requirements, the ideal location for the monopole was about one half mile from the proposed site. Comcast did not seek approval for that location because it is in a residential zone near a school. To avoid the residential zone, Comcast was willing to accept a ten to twenty percent deterioration in signal strength. Finally, the health physicist explained that the monopole would not generate any harmful radiation.

Tenants of a nearby apartment complex and owners of area businesses objected to Comcast's application, primarily for esthetic reasons. Neither Comcast nor the objectors introduced testimony from a licensed land use planner, real estate expert, or other qualified witness regarding the effect of the grant of the variance on the zone plan or the zoning ordinance.

The Board denied the use variance, finding that Comcast had not established that the variance would not detrimentally affect the Borough's master plan and zoning ordinance. The Law Division reversed, stating that Comcast was apparently "amenable to constructive alternatives but [was] cut off at the pass." As the Law Division explained, "the mind set of the [Board] was substantially made up and intractable." The court concluded that the Board's decision was arbitrary, capricious, and unreasonable. It ordered the grant of the use variance, and remanded the matter to the Board for consideration of the site plan. Thereafter, the Board approved the site plan subject to the condition that Comcast "take no action to develop the property until all appeals [in the within matter] are concluded."

The Appellate Division affirmed the judgment of the Law Division. It held that the inherently beneficial nature of the proposed use satisfied the positive criteria, and that the negative aspects of the use were insubstantial.

We granted the Board's petition for certification, and remanded for reconsideration in light of *Smart.* 153 *N.J.* 46, 707 *A.*2d 150 (1998). The Appellate Division affirmed its original judgment.

## II.

 The Board, the Law Division, and the Appellate Division, like their counterparts in the *New Brunswick* case, proceeded on the assumption that telecommunications facilities are inherently beneficial uses. *Smart* determined, however, that such facilities are not inherently beneficial. *Smart, supra,* 152 *N.J.* at 329, 704 *A.*2d 1271. Recognizing that the facilities nonetheless provide an essential public service, we held that an FCC license will generally satisfy the requirement that the facility serve the public welfare. *Id.* at 336, 704 *A.*2d 1271. Still, an applicant must demonstrate that its chosen site is particularly suited for the proposed use and that the application may be granted without violating the negative criteria. Finally, as with an inherently beneficial use, a weighing of the positive and negative criteria must show that granting the variance will not result in a substantial detriment to the public good. *Id.* at 332, 704 *A.*2d 1271.

 The record indicates that Comcast has satisfied the positive criteria. Its FCC license demonstrates that its use will serve the public welfare. In addition, Comcast presented uncontroverted testimony establishing the need for additional service in the area. The site, moreover, is particularly suited for a telecommunications facility. It is in a commercial zone, adjoins a major highway, and is well situated within Comcast's system to deliver the necessary service.

 Comcast, however, did not present expert testimony from a land use planner or other qualified expert on the effect of the grant of the variance on the master plan or zoning ordinance. Although cases may arise in which expert testimony is unnecessary, we believe that the better practice is for applicants generally to present such testimony. Given the lengthy history of this case, and the modification of the dispositive legal principles during its pendency, we conclude that the appropriate resolution is to remand the matter to the Board so Comcast and other interested parties may offer expert testimony concerning the negative crite-

ria. If the Board approves the use variance, it should then consider Comcast's request for a bulk variance.

The decision of the Appellate Division is reversed, and the matter is remanded to the Board.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.