734 A.2d 826 (1999)
324 N.J. Super. 166
NEW YORK SMSA LIMITED PARTNERSHIP, Plaintiff-Respondent,
v.
BOARD OF ADJUSTMENT OF the TOWNSHIP OF MIDDLETOWN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1999.
Decided August 3, 1999.
*827 Bernard M. Reilly, Red Bank, for defendant-appellant (Dowd & Reilly, attorneys; Mr. Reilly, on the brief).
Richard D. Stanzione, Toms River, for plaintiff-respondent (Hiering, Dupignac & Stanzione, attorneys; Mr. Stanzione, on the brief).
Before Judges SKILLMAN, PAUL G. LEVY and LESEMANN.
The opinion of the court was delivered by PAUL G. LEVY, J.A.D.
Defendant appeals from a judgment setting aside its denial of a variance for the construction of a cellular transmission tower or monopole in a residential zone. This case differs from the tower cases that have previously come before the court in that this municipality adopted a comprehensive ordinance specifically directed at communications towers. The Zoning Board of Adjustment denied the variance, largely because plaintiff never satisfactorily explained why it could not mount its antennae on one of several existing structures in the area. In the Law Division, the judge held that the site was particularly suited to the proposed use and reversed the Board. We reverse that judgment on the ground that the Board reasonably exercised its discretion in denying the variance. Further, we hold that the denial of the variance does not violate the federal Telecommunications Act of 1996.[1]
Plaintiff is the contract purchaser of a 4.25 acre wooded tract in Middletown Township, located at the eastern end of West Nut Swamp Road where it abuts the Garden State Parkway right-of-way. The site is zoned R-45, single-family residential, which requires a minimum lot size of *828 one acre. The application was for a 125 foot high monopole housing nine antennae, along with an unmanned twelve-foot by thirty-foot building to shelter communications equipment, all surrounded by a fence. In this zone, height is limited to thirty-five feet and the proposed use is prohibited.
Cellular telephone communication towers are permitted conditional uses in nonresidential zones under Ordinance 95-24-21, which the governing body approved on December 11, 1995. Among other things, that ordinance prohibits towers within 200 feet of a residential zone. In addition, applicants are required to submit a narrative statement explaining why construction of a tower at a chosen site is necessary for "the efficiency and effectiveness" of its service. An applicant must also explain why it could not use an existing tower or other structure.[2]
Plaintiff claimed it experienced a gap in coverage for customers traveling along the Garden State Parkway between mile markers 109 and 114. This area of Monmouth County is characterized by rolling hills and valleys, and just south of mile marker 114 the terrain drops about 100 feet. Similarly, heading north along the Parkway from mile marker 109, the elevation again drops. The site is relatively low-lying, about 110 feet above sea level. By comparison, a tower utilized by plaintiff's chief competitor, Comcast, is located at mile marker 114, and is about 220 feet above sea level.
Plaintiff's professional planner testified that plaintiff met the positive criteria for a use variance because the tower was an inherently beneficial use. As to the negative criteria, the planner testified that because the monopole is to be built at a relatively low elevation and is surrounded by mature trees averaging sixty feet high, the impact on surrounding residences would be minimal. Plaintiff's expert real estate appraiser testified that the tower would not adversely affect the value of adjacent residential properties.
The principal issues at the hearing were plaintiff's need for a new tower and whether another site might suffice. Plaintiff relied on an in-house cellular engineer as its expert witness to explain the technical issues. His primary responsibility was to find sites to meet plaintiff's coverage needs. He explained that customers driving along the Garden State Parkway in the concerned area experience static and/or dropped calls above the two percent company standard. A signal level of -75 dBm is the minimum signal level acceptable to plaintiff, and when a signal level falls below -100 dBm, customers hear static on their cellular phones and sometimes lose the call altogether. He also testified that customers have complained to plaintiff about service in the area in question. However, an objecting neighbor testified that she tested her Bell Atlantic cellular phone along the portion of the Parkway in question, and experienced no poor service or dropped calls.
Plaintiff has existing towers at mile markers 109 and 116. Comcast has a tower at mile marker 114, about 3300 feet north of the proposed site. Plaintiff considered locating its antennae on the Comcast monopole, but concluded that that location would not meet its coverage needs for vehicles near mile marker 109. Another possible location was the Lucent building near the Comcast tower. The engineer tested the suitability of the Lucent building by placing a twelve-foot antenna atop the building, which was fifty feet above ground level and 220 feet above sea level, but he concluded that the signal would fail at approximately mile marker 113, primarily because of the elevation drop on the stretch of the Parkway that plaintiff was attempting to service. He conceded, however, that a seventy-five foot antenna atop the Lucent building would *829 provide improved signal quality, although he was unable to predict the extent of static or the number of dropped calls if an antenna was built there.
Objectors questioned plaintiff's need for the tower at the location in question, and stated their belief that the tower would impair property values. One neighbor pointed out that plaintiff had not supplied the information required to complete an application for a variance. The objectors also suggested other possible locations not explored by plaintiff, including either of two water towers in the area. Another neighbor pointed out that recently a new tower was approved in the adjacent municipality of Holmdel. Plaintiff's engineer said that the Holmdel tower, if ultimately approved (apparently there was some litigation), might adequately handle cellular calls along the area of the Parkway in question.
In its resolution denying the application, the Board acknowledged it was bound by then existing case law classifying cellular towers as inherently beneficial uses. Nonetheless, it deemed plaintiff's testimony regarding the efficiency and effectiveness of plaintiff's current system "to be weak and equivocal," found that plaintiff's evidence "fell far short of proving that cellular telephone coverage in the area in question was so unsatisfactory that a new tower was actually needed," and concluded that the applicant had not satisfactorily explained why it could not locate on another tower, particularly the Comcast tower at mile marker 114 or atop the Lucent building. As to the negative criteria, the Board found that the proposed use would impair the intent and purpose of the zone plan and zoning ordinance, because allowing the construction of a tower in a residential zone would conflict with the intent of the 1995 ordinance to control the proliferation of communications towers within the municipality. Moreover, the Board rejected plaintiff's real estate testimony, and instead found "unequivocally that this tower located in a residential zone would have a deleterious and severely detrimental effect on not only the existing residential neighborhood, but on the future development of vacant land within the area." It concluded that plaintiff's "case was weak, the testimony inconsistent, and the benefit to be [realized] produced minimal service improvement at best." It expressly found that plaintiff failed to meet several of the standards set forth in the 1995 ordinance.
In reversing, the Law Division judge held that under Smart SMR v. Fair Lawn Bd. of Adjustment, 152 N.J. 309, 704 A.2d 1271 (1998), plaintiff was entitled to the variance. As to the positive criteria, plaintiff had proven that the site was particularly suited for the proposed use because it provided unrebutted proofs that other locations suggested by the Board could not be used to close a gap in coverage. Disagreeing with the Board's assessment of plaintiff's testimony, the judge held that plaintiff presented in-depth testimony as to why the tower could not be located on either the Lucent building or the Comcast tower. With respect to the negative criteria, the judge rejected the Board's conclusion regarding the impact of the tower on real estate values, holding that under Smart, those conclusions had to be supported by expert testimony. He also noted that, while Smart did allow the Board to focus on the visual impact of the tower and the fact that it was to be constructed in a single-family residential zone, the proofs here showed that the visual impact would be slight because the tower was to be built in a relatively low-lying area and would be surrounded by mature trees. Moreover, plaintiff had adequately demonstrated that the tower could not be built in a non-residential zone.
On appeal, while not directly responding to the Board's contention that plaintiff failed to comply with the terms of the ordinance, plaintiff says it provided that information during the hearings and demonstrated that the proposed site is the only feasible location which would meet plaintiff's coverage needs. It argues that the *830 site is particularly suited for the proposed use because: (1) it is the only available location that will work for plaintiff; and (2) the impact on surrounding residences will be negligible because it is fairly isolated from adjacent neighborhoods, is situated on a relatively low lying tract of land, and existing mature vegetation effectively screens the tower. Plaintiff adds that the Board's findings regarding the adverse impact on property values cannot stand because they are unsupported by expert testimony. Finally, plaintiff suggests that federal law preempts the Board's consideration of technical issues and shifts the burden of persuasion to the Board to justify denial.
The Municipal Land Use Law (MLUL) reflects a strong legislative policy favoring land use regulation by ordinance rather than by variance. Medici v. BPR Co., 107 N.J. 1, 5, 526 A.2d 109 (1987). It is for the governing body to determine by ordinance the compatibility of particular uses in different districts and to establish the standards for different uses. N.J.S.A. 40:55D-62(a) (zoning ordinances "shall be drawn with reasonable consideration to the character of each district and its particular suitability for particular uses and to encourage the most appropriate use of land"); N.J.S.A. 40:55D-65 (contents of zoning ordinances). In reviewing variance requests, a board of adjustment must carefully guard against usurping the legislative power reserved to the governing body. Feiler v. Fort Lee Borough Bd. of Adjustment, 240 N.J.Super. 250, 255, 573 A.2d 175 (App.Div.1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991).
Nothing in Smart indicates that the overall philosophy of the MLUL favoring comprehensive planning over ad hoc decision-making should not apply equally to communications towers. By recognizing that towers "may be more appropriate in one zone than another or in one area of a zone than another," ibid., the Court encouraged municipalities to approach the issue through comprehensive planning. Recently, the Court has reaffirmed its encouragement of zoning ordinances "identifying zones and sites for such facilities." New Brunswick Cellular Telephone Co. v. South Plainfield Bd. of Adjustment, 160 N.J. 1, 15, 733 A.2d 442 (1999).
Plaintiff's application clearly violated the prohibition against towers within 200 feet of any residential zone. Additionally, it failed to comply with the procedural and informational requirements set forth in subsections A and B of the ordinance, which state:
A. A narrative statement must be submitted by the applicant setting forth the reasons that the proposed installation must be provided above ground and in the particular location proposed. The statement must show that the installation in the location proposed is necessary for the efficiency and effectiveness of the public utility system and for the provision of service to the general public or the neighborhood impacted by the installation.
B. Applicants seeking to install any above ground communication towers shall provide testimony and evidence addressing whether there are existing towers within the vicinity which could be utilized by the applicant as an alternate to constructing a new tower. In addition, the applicant shall provide evidence and testimony as to the availability of placing the tower atop any structure of at least two stories or 20 feet in height within the vicinity.
Some of this information was provided at the hearings. However, plaintiff's failure to provide the information in advance of the hearings significantly hampered the ability of both the Board and objectors to gather data or expert opinion to challenge plaintiff's insistence that the tower must be located at the chosen site in order to meet its minimal needs. Moreover, plaintiff *831 did not provide all of the information demanded by the ordinance. While testimony in the record supports its claim that neither the Comcast tower nor the Lucent building would meet its needs, it never satisfactorily explained why the antennae could not be located on the water tower mentioned by one of the neighbors or on another monopole recently approved by Holmdel. Thus, the Board was justified in concluding that the applicant did not demonstrate a special reason for the requested variance.
In addition, we conclude that the grant of this variance, in a zone recently singled out by the municipality as inappropriate for the proposed use, does not satisfy the second prong of the negative criteria, that the variance will not "substantially impair the intent and purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70(d); New Brunswick Cellular, supra, 160 N.J. at 6, 733 A.2d 442; AWACS, Inc. v. Clemonton Zoning Bd. of Adjustment, 160 N.J. 21, 24-25, 733 A.2d 453 (1999).
Plaintiff insists, however, that the Board exceeded its jurisdiction in making its independent assessment as to the need for a tower at the location selected by plaintiff and the possible availability of other locations. Plaintiff relies on two sections of the Telecommunications Act of 1996 (TCA), Pub.L. No. 104-104, 110 Stat. 56 (codified as amendments in scattered sections of 15 U.S.C.A., 18 U.S.C.A. and 47 U.S.C.A.). First, it claims the Board violated that section of the Act which, although it preserves local zoning authority, prohibits regulation which has "the effect of prohibiting the provision of personal wireless services." 47 U.S.C.A. § 332(c)(7)(B)(i)(II). Plaintiff reasons that municipal agencies violate this section when an area zoned for telecommunications facilities does not meet a particular carrier's need. Second, plaintiff relies on that section of the TCA which requires that zoning decisions be "supported by substantial evidence contained in a written record." 47 U.S.C.A. § 332(c)(7)(B)(iii). Plaintiff reasons that a board violates the "substantial evidence" requirement when it disregards competent expert testimony.
Federal cases construing the TCA do not support these arguments. In Cellular Telephone Co. v. Zoning Bd. of Adjustment of Ho-Ho-Kus, 24 F.Supp.2d 359, 372 (D.N.J.1998), plaintiff insisted that the board was bound by the testimony of its experts that existing service was inadequate, and impermissively relied on the testimony of two local residents who had successfully made test calls from areas plaintiff identified as having coverage gaps. The court agreed with plaintiff that the non-expert testimony was not sufficient in itself to discredit the testimony of qualified experts. Ibid. Nonetheless, the court upheld the variance denial, pointing out that at best plaintiff's experts demonstrated that there were gaps in service, "not that service is unavailable." Ibid. The FCC does not mandate optimal service but only "sound, favorable, and substantially above a level of mediocre service." Id. at 372 n. 10 (quoting 47 C.F.R. § 22.940 (1997)). The court went on to say:
Were courts to hold that merely because there are some gaps in wireless service in an area (or even if service is basically unavailable as in the case of Nextel), the public interest necessarily tips the balance in favor of allowing a variance, local boards would be obliged to approve virtually every application which would improve service, without regard to its impact on the surrounding areas. That simply cannot be the case. Such a result would vitiate state land use law and render irrelevant the factors considered in a variance application. As long as the Board's decision was not an attempt to prohibit personal wireless service altogether, to discriminate among providers, or to impermissively base its denial *832 upon the environmental effects of radio frequency emissions, local land use law is controlling.
[24 F.Supp.2d at 373.]
The TCA, at 47 U.S.C.A. § 332(c)(7)(B)(i)(II), states that local zoning authorities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." But here, as in the Ho-Ho-Kus case, there is neither a moratorium nor a blanket prohibition, just one decision in a municipality that permits wireless facilities in other locations. Id. at 374-75.
In another case construing the TCA, the focus was on the extent to which a local board was bound by the carrier's choice as to the level of coverage it wished to provide. Sprint Spectrum L.P. v. Willoth, 176 F.3d 630 (2d Cir.1999), aff'g 996 F.Supp. 253 (W.D.N.Y.1998). Plaintiff sought to build three towers which would provide a signal strong enough for "inbuilding" coverage. Id., at 636. The local planning board thought that in-vehicle coverage was enough. Id. at 636. Plaintiff argued that under subsection (B)(i)(II) of the TCA, it had the right "to construct any and all towers that, in its business judgment, it deems necessary to compete effectively with other telecommunications providers, wireless or not." Id. at 639. While the court acknowledged that this subsection could not "regulate personal wireless service facilities in such a way as to prohibit remote users from reaching such facilities," id., at 643, that did not mean that the carrier's choice bound the board. Id. at 643. Rather, the TCA's "ban on prohibiting personal wireless services precludes denying an application for a facility that is the least intrusive means for closing a significant gap in a remote user's ability to reach a cell site that provides access to land-lines." Ibid. (emphasis added).
Those cases support the Board's denial here. Plaintiff was not entitled to a variance simply because a signal level of - 75 dBm is desirable as a matter of company policy. Plaintiff's own tests showed that a twelve-foot tower plaintiff placed atop the Lucent building provides signal strength above -100 dBm as far down as mile marker 109. Seemingly, plaintiff's existing tower at mile marker 109 would close the gap. Under the ordinance, it was plaintiff's obligation to establish a need for the new facility at the proposed location. The cellular engineer never effectively answered the questions of the Board and the neighbors as to why a taller tower on the Lucent building, or on one of the other suggested locations, would not provide adequate coverage, as opposed to the optimal coverage desired by plaintiff. The Board's denial did not violate the TCA.
Finally, although plaintiff correctly contends that the Board's findings regarding the effect of the tower on the value of adjacent properties cannot stand, that is not enough to reverse the decision of the Board:
Proof of an adverse effect on adjacent properties and on the municipal land use plan, moreover, generally will require qualified expert testimony. Bare allegations that the construction of a tower or monopole will cause a decline in property values rarely will suffice.
[Smart, supra, 152 N.J. at 336, 704 A.2d 1271.]
As the trial judge stressed in his opinion, most of the residential properties are some distance from the tower, and the combination of tall trees and low elevation are likely to minimize the impact of the height. But that alone is not enough to set aside the variance denial.
Accordingly, we reverse the judgment of the Law Division.
NOTES
[1] We reached a similar result in New York SMSA Ltd. Partnership v. Board of Adj. of Twp. of Bernards, 324 N.J.Super. 149, 734 A.2d 817, argued on the same date and filed herewith.
[2] A number of other requirements were either met by plaintiff or were not applicable, including a prohibition against locating towers within 2000 feet of each other and a tower design which minimizes the visual impact of the tower.