**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4509-17T4

QUICK PLUS REALTY, LLC,

    Plaintiff-Appellant,

v.

CITY OF BRIDGETON
ZONING BOARD, VISHNU
PATEL (improperly pleaded as
Vishna Patel) and DIPAK PATEL,

    Defendants-Respondents.

_____

Submitted March 25, 2019 – Decided June 13, 2019

Before Judges Messano and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0618-17.

Law Offices of Igor Sturm, attorneys for appellant (William C. MacMillan, on the briefs).

Kathleen McGill Gaskill, attorney for respondent City of Bridgeton Zoning Board.

Howard D. Melnicove, attorney for respondents Vishnu Patel and Dipak Patel.

PER CURIAM

Pursuant to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, a zoning board of adjustment may "grant a variance . . . to permit . . . a use . . . in a district restricted against such use . . . ." N.J.S.A. 40:55D-70(d). A variance may be granted "[i]n particular cases for special reasons," the so-called positive criteria, but the applicant must also demonstrate "that such variance . . . can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance[,]" the so-called negative criteria. N.J.S.A. 40:55D-70; see Price v. Himeji, LLC, 214 N.J. 263, 285-86 (2013) (explaining the positive and negative criteria).

Defendants Dipak Patel and his father, Vishnu Patel, (the applicants) were contract purchasers of certain property in Bridgeton (the property). The property was located in the R-1 zone, a low-density residential district, but immediately adjacent to the C-4 commercial district, and had been used as a funeral home for approximately sixty years. A religious group purchased the property in December 2009, intending to convert it into a church. The group abandoned that plan, and the property fell into disrepair.

The applicants wanted to demolish the existing structure and build a new commercial building housing a beauty salon and beauty supply store. They applied to defendant City of Bridgeton Zoning Board of Adjustment (the Board) for a use variance pursuant to N.J.S.A. 40:55D-70(d)(1). The applicants provided public notice for the June 8, 2017 hearing, specifying the location of the property and the date and place of the hearing. The notice also stated:

> The applicants . . . are seeking a use variance for the development of a retail sales and beauty salon facility which type of commercial uses are not permitted in the R-1 [z]oning [d]istrict, in which the property is located.
>
> A copy of said application and documents are on file with the . . . Board . . . and may be inspected during business hours by all interested parties prior to said meeting.

Dipak Patel testified before the Board, as did George Scull, a local realtor, and Thomas J. D'Arrigo, an architect, in support of the application. Scull opined that it was not financially feasible to demolish the existing structure and parking lot and construct a new single-family home. D'Arrigo described the proposed development, which he opined would be a substantial aesthetic improvement from the existing condition of the property. Dipak Patel admitted that the applicants likely would still purchase the property without a use variance.

A-4509-17T4

Members of the public expressed concerns about increased traffic in the area, and one suggested that the public notice should have contained the specific address of the Board. The attorney for plaintiff Quick Plus Realty, LLC maintained that the proposed use violated the intent of the R-1 zone. He acknowledged that plaintiff's managing member was related to the applicants, and there was "some type of [] family . . . disagreement," although he did not elaborate.

The Board approved the variance application by a vote of five-to-two, conditioned on subsequent approval of a site plan. See N.J.S.A. 40:55D-76(b) (permitting bifurcation of application for development and requiring approval to be conditioned on subsequent approvals). In its July 13, 2017 memorializing resolution, the Board found the applicants satisfied the "positive criteria" by establishing "special reasons" for the variance, "as the proposed site [was] particularly suited for this intended use." It noted the current building had been used for commercial purposes for at least sixty years and "[t]he developed existing conditions . . . [were] completely inconsistent with residential use." Furthermore, converting the property to a residential use "would be cost prohibitive . . . ." Therefore, the Board held that compelling the residential use

of the property would cause it to "remain in its present vacant and deteriorating state and in a state of inutility."

The Board also concluded the applicants "satisfied the negative criteria," because it could grant the variance "without substantial detriment to the public good." Regarding traffic concerns, the Board noted the proposed use was less intense than the prior use of the property as a funeral parlor. The Board also found it could grant the variance "without substantial impairment of the zoning plan as the actual historical development of the . . . [p]roperty ha[d] been commercial and the . . . application [was] converting one pre-existing commercial use to another."

Plaintiff filed a complaint in lieu of prerogative writs challenging the Board's approval. It alleged that the notice was inadequate and the applicants failed to present sufficient evidence supporting the Board's findings regarding the positive and negative criteria. At argument before the Law Division judge, plaintiff challenged the Board's finding of the property's economic inutility, noting Dipak Patel's testimony. It disputed the conclusion that the application satisfied the "negative criteria" because the Board premised this on consideration of the already "pre[-]existing, non-conforming use" of the property.

In a comprehensive oral decision, Judge Benjamin C. Telsey addressed these arguments and concluded the Board properly considered the evidence supporting the positive and negative criteria under N.J.S.A. 40:55D-70(d) and did not act in an arbitrary, capricious or unreasonable manner in granting the variance. He dismissed plaintiff's complaint and this appeal followed.

We set forth some well-known principles. "Our standard of review for the grant or denial of a variance is the same as that applied by the Law Division." Advance at Branchburg II, LLC v. Twp. of Branchburg Bd. of Adjustment, 433 N.J. Super. 247, 252 (App. Div. 2013) (citing Bressman v. Gash, 131 N.J. 517, 529 (1993)). "[Z]oning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Price, 214 N.J. at 284 (second alteration in original) (quoting Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965)). A zoning board's decision "enjoy[s] a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Ibid. (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002)).

While we accord substantial deference to the factual findings of the Board, its conclusions of law are subject to de novo review. Wyzykowski v. Rizas, 132

N.J. 509, 518 (1993). "In evaluating a challenge to the grant or denial of a variance, the burden is on the challenging party to show that the zoning board's decision was 'arbitrary, capricious, or unreasonable.'" Price, 214 N.J. at 284 (quoting Kramer, 45 N.J. at 296).

Plaintiff contends the public notice was insufficient, thereby depriving the Board of jurisdiction to hear the application. Plaintiff also argues that the applicants failed to adduce sufficient evidence supporting both the positive and negative criteria. Having considered these arguments in light of the record and applicable legal standards, we affirm.

The MLUL requires that the public notice for a variance application include: (1) "the date, time and place of the hearing," (2) "the nature of the matters to be considered," (3) "an identification of the property proposed for development by street address," and (4) "the location and times at which" any supporting documents for application are available. N.J.S.A. 40:55D-11. Plaintiff argues the applicants' public notice was insufficient as to (2) and (4), because the notice omitted details as to the nature of the application and failed to indicate where the supporting documents were available for inspection. The argument lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(1)(E). We add only the following.

"[P]roper public notice in accordance with the requirements of the MLUL is a jurisdictional prerequisite for a zoning board's exercise of its authority." Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adjustment, 397 N.J. Super. 335, 350 (App. Div. 2008) (citing Perlmart of Lacey, Inc. v. Lacey Twp. Planning Bd., 295 N.J. Super. 234, 237 (App. Div. 1996)). The "[f]ailure to provide proper notice deprives a municipal planning board of jurisdiction . . . ." Shakoor Supermarkets, Inc. v. Old Bridge Twp. Planning Bd., 420 N.J. Super. 193, 201 (App. Div. 2011) (citing Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 79 (1998)).

The MLUL only requires "a common sense description of the nature of the application, such that the ordinary layperson could understand its potential impact upon him or her . . . ." Perlmart, 295 N.J. Super. at 239. The notice here did that. We also reject, as did Judge Telsey, any claim that advising the public all relevant documents were available for inspection at the Board's office was insufficient because it did not provide the Board's address. Common sense dictates that any member of the public concerned about the application could easily find the address of the Board.

Turning to plaintiff's challenge on the merits, a zoning board "may not, in the guise of a variance proceeding, usurp the legislative power reserved to the

governing body of the municipality to amend or revise the [zoning] plan. . . ." Price, 214 N.J. at 285 (alteration in original) (internal quotation marks omitted) (quoting Feiler v. Fort Lee Bd. of Adjustment, 240 N.J. Super. 250, 255 (App. Div. 1990)). The positive criteria requires proof of "special reasons" for the grant of a variance, a term undefined by the MLUL, but interpreted as "tak[ing] its definition and meaning from the general purposes of the zoning laws . . . ." Ibid. (quoting Burbridge v. Governing Body of Mine Hill, 117 N.J. 376, 386 (1990)).

> Generally, three categories of circumstances constitute "special reasons": (1) where the proposed use . . . inherently serves the public good; (2) where a zoning restriction imposes an "undue hardship" on the property owner; and (3) where the use serves the general welfare because "the proposed site is particularly suitable for the proposed use."
>
> [Kane Props., LLC v. City of Hoboken, 423 N.J. Super. 49, 63 (App. Div. 2011) (citations omitted).]

Plaintiff contends the property's alleged economic inutility as a residential use is actually a self-imposed hardship, and the property's adjacency to the commercial zone did not constitute "special reasons" for the variance. See, e.g., Cerdel Constr. Co. v. Twp. Comm. of E. Hanover, 86 N.J. 303, 306 (1981) ("It can always be said that the border area of a zone is affected by adjoining uses and that such an area is particularly adaptable to uses pursuant to a variance.

However, the lines have to be drawn somewhere if a zone plan is to have any real purpose."). Plaintiff contends that the application was nothing more than the substitution of one non-conforming use for another.

We acknowledge, as did the trial judge, that the type and degree of economic inutility that satisfies the positive criteria has no definitive interpretation, and "the exact boundaries within which a zoning board may consider economic inutility have not been clearly drawn." Elco v. R.C. Maxwell Co., 292 N.J. Super. 118, 130 (App. Div. 1996) (citing Henningsen v. Twp. of Randolph, 214 N.J. Super. 82, 90-94 (App. Div. 1986)). "However, land zoned to preclude any economically feasible use is considered to place an undue burden on the owner, sufficient to require grant of a (d) variance." Kane, 423 N.J. Super. at 63 (citing Medici v. BPR Co., 107 N.J. 1, 17 n.9 (1987)).

Here, there was sufficient evidence that the applicants could not feasibly develop the property to conform to the zoning restrictions. See Stop & Shop Supermarket Co. v. Bd. of Adjustment of Springfield, 162 N.J. 418, 431 (2000) (citing Medici, 107 N.J. at 17 n.9) (noting "special reasons" include proof that "undue hardship exists because the property for which the use variance is sought cannot reasonably be adapted to a conforming use"). The Board reached that

conclusion based on the expert testimony at the hearing and its particularized local knowledge, and we find no reason to disturb it.

Additionally, "'[u]nique suitability' is a well-established category of special reasons." Anfuso v. Seeley, 243 N.J. Super. 349, 372 (App. Div. 1990) (citing Ward v. Scott, 16 N.J. 16, 22 (1954)). "[T]he particularly suitable standard has always called for an analysis that is inherently site-specific." Price, 214 N.J. at 288. To meet the burden of establishing peculiar suitability, an applicant must show the particular site is the one that, with the variance approved, would advance the public welfare. Funeral Home Mgmt., Inc. v. Basralian, 319 N.J. Super. 200, 209 (App. Div. 1999). The Court more recently explained:

> Although the availability of alternative locations is relevant to the analysis, demonstrating that a property is particularly suitable for a use does not require proof that there is no other potential location for the use nor does it demand evidence that the project "must" be built in a particular location. Rather, it is an inquiry into whether the property is particularly suited for the proposed purpose, in the sense that it is especially well-suited for the use, in spite of the fact that the use is not permitted in the zone.
>
> [Price, 214 N.J. at 292-93.]

In Price, the Court held that an applicant, who sought permission to construct a new multi-unit residential building, met its burden of showing

peculiar suitability. Id. at 271, 293. In adopting a more flexible standard, the Court noted that the board articulated several reasons, including the site's topography, its location adjacent to another zone where the proposed use is permitted, other existing properties developed with similar characteristics to the use sought by the variance, and the property's existing non-conforming uses, which needed redevelopment. Id. at 274-75. The board also found that the variance would advance the general welfare by providing new and aesthetically improved housing for the municipality's growing population. Id. at 275.

Here, the Board considered the long-standing, existing commercial use of the property in a residential zone, and its "vacant and deteriorating state . . . ." It noted the property's "close proximity to the C-4 District" and its "existing site improvements," i.e., a large impermeable parking lot, making it unlikely "to be developed into a single[-]family residence."

A zoning board's decision "enjoy[s] a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Id. at 284 (citing Cell S., 172 N.J. at 81). We find no mistaken exercise of the Board's discretion with respect to the positive criteria.

As to the negative criteria, the applicant must "demonstrate, in accordance with the enhanced quality of proof, both that the variance 'can be granted without

12

substantial detriment to the public good' and that it 'will not substantially impair the intent and the purpose of the zone plan and zoning ordinance[.]'" Id. at 286 (citations omitted) (quoting N.J.S.A. 40:55D-70). "[T]he negative criteria constitute an essential 'safeguard' to prevent the improper exercise of the variance power." Medici, 107 N.J. at 22. The "criteria for determining when a variance grant constitutes an impermissible exercise of the zoning power . . . [is] 'whether the impact of the requested variance will be to substantially alter the character of the district as that character has been prescribed by the zoning ordinances.'" Feiler, 240 N.J. Super. at 255 (quoting Twp. of Dover v. Bd. of Adjustment of Dover, 158 N.J. Super. 401, 412-13 (App. Div. 1978)).

"The focus of the 'substantial detriment' prong . . . is on the impact of the variance on nearby properties." William M. Cox & Stuart R. Koenig, N.J. Zoning & Land Use Administration § 36-2.2 (2019). "The proof required for the second of the negative criteria must reconcile the grant of the variance for the specific project at the designated site with the municipality's contrary determination about the permitted uses as expressed through its zoning ordinance." Price, 214 N.J. at 286 (citing Medici, 107 N.J. at 21).

Plaintiff argues there was insufficient evidence before the Board as to both prongs of the negative criteria. It notes the public objections to increased traffic

as a result of the proposed commercial use, and that bifurcation of the application was improper because the use variance and the actual development of the site were intertwined. See, e.g., House of Fire Christian Church v. Zoning Bd. of Adjustment of Clifton, 379 N.J. Super. 526, 540 (App. Div. 2005) (quoting Meridian Quality Care, Inc. v. Bd. of Adjustment of Wall, 355 N.J. Super. 328, 340 (App. Div. 2002)) (noting bifurcation "may not be appropriate if the board considers the use variance and site plan issues so interrelated that both applications should be considered in a single administrative proceeding, at which the board would decide the negative criteria based on the entire plan submitted"). Plaintiff points to the city's ordinance that recognized limiting traffic in residential zones as a purpose of the R-1 zoning restrictions.

The Board's findings support its conclusion that the grant of the use variance would not cause substantial detriment to the public good precisely because they reflect a site-specific consideration of any impact upon surrounding properties. It noted that the property was surrounded by other commercial properties, a school and some residences, including a "dilapidated residence," which the applicants were negotiating to purchase. The Board's planner noted that the property had not been used for residential purposes for several decades. The Board also heard testimony that the anticipated

14

improvements to the property would lessen its commercial appearance and make it more consistent with surrounding residential properties.

As to the second prong of the negative criteria, variance from zoning regulations is improper only if it "substantially impair[s]" the master plan. N.J.S.A. 40:55D-70 (emphasis added). As we recognized many years ago,

> The key word here is "substantially." It comes from the statute itself. Obviously, any permission for a nonresidential use in a residential zone may have some tendency to impair residential character, utility or value. But the statutory rationale of the function of the board of adjustment is that its determinations that there are special reasons for a grant of variance and no substantial detriment to the public good or impairment of the zone plan, etc., in such grant represent a discretionary weighing function by the board wherein the zoning benefits from the variance are balanced against the zoning harms. If on adequate proofs the board without arbitrariness concludes that the harms, if any, are not substantial, and impliedly determines that the benefits preponderate, the variance stands.
>
> [Yahnel v. Bd. of Adjustment of Jamesburg, 79 N.J. Super. 509, 519 (App. Div. 1963).]

The record evidence in this case demonstrates that the grant of a use variance did not substantially alter the character of the R-1 zoning district. Feiler, 240 N.J. Super. at 255.

Lastly, the Board did not mistakenly exercise its discretion in considering a bifurcated application. The applicants have the continuing obligation to satisfy

15

the negative criteria when seeking site plan approval.  See Meridian Quality Care, 355 N.J. Super. at 332 (noting that N.J.S.A. 40:55D-76(b) has the same negative criteria language found in N.J.S.A. 40:55D-70(d)).  Therefore, plaintiff and the public at large will have the opportunity to address again their traffic concerns when the applicants present the site plan.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4509-17T4