240 N.J. Super. 250 (1990)
573 A.2d 175
HELMUT FEILER, HILDA FEILER, AND ATLAS FIVE AND TEN, INC., PLAINTIFFS-APPELLANTS,
v.
FORT LEE BOARD OF ADJUSTMENT, MAYOR AND COUNCIL OF THE BOROUGH OF FORT LEE, JOHN E. COLLAZUOL, FORT LEE CONSTRUCTION OFFICIAL, AND OWNERS MAINTENANCE CORP., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1989.
Decided March 26, 1990.
*251 Before Judges GAULKIN, DREIER and D'ANNUNZIO.
Frederick L. Bernstein argued the cause for appellants.
George B. Gelman (Gelman & McNish), argued the cause for respondent Owners Maintenance Corp. (Jill L. McNish, of counsel and Philip L. Guarino, on the brief).
Frank J. Cuccio (Cuccio & Cuccio) argued the cause for respondent Fort Lee Board of Adjustment.
Kenneth W. Herbert filed a letter brief on behalf of respondent Mayor and Council of the Borough of Fort Lee.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Plaintiffs appeal the grant of use and bulk variances for a mixed commercial and high rise residential development adjacent to the George Washington Bridge approach lanes. Plaintiffs' appeal to the governing body was stillborn because the Fort Lee Borough Council reached a consensus not to hear it. Respondents contend that pursuant to N.J.S.A. 40:55D-17(c) the council's decision not to hear the appeal constituted an affirmance of the Board of Adjustment's action. But cf. Com. *252 for a Rickel Altern. v. City of Linden, 111 N.J. 192, 543 A.2d 943 (1988). The Law Division affirmed the variances.
We do not address the issues generated by the council's action. We conclude, for the reasons expressed below, that the development proposal should have been presented to the planning board and the borough council as a request for a zoning ordinance amendment and, therefore, we reverse.
The development site is 15.69 acres. It is bounded on the west by Lemoine Avenue, on the north by South Marginal Road, on the east by Central Road and on the south by Main Street. Hoyt Avenue and Hudson Street parallel Lemoine Avenue and Central Road and divide the site into three blocks. The site is designated as tax blocks 4801, 4802 and 4803 and is located several blocks west of the Hudson River and the George Washington Bridge. A map of the site is attached as Appendix A.
The site is undeveloped except for a few modest structures on Main Street and Lemoine Avenue and is used occasionally as an informal parking area.[1] The developer is Owners Maintenance Corp. The site is in the C-1 and R-4A zones. The C-1 zone is the borough's central business zone and includes Block 4801 and the westerly half of Block 4802. The easterly half of Block 4802 and almost all of Block 4803 are in the R-4A zone. See Appendix B. Residential uses are not permitted in the C-1 zone. The R-4A zone permits one and two-family residences on lots of 5,000 and 6,000 square feet. The maximum building height in R-4A is 35 feet. The project encompasses the entire R-4A zone.
The area surrounding the site is zoned for residential, commercial and office use. Uses to the west of the site include banks, mixed commercial and convenience uses, three-story apartment buildings, a diner, a used car lot and a gas station. *253 Uses to the north include a drive-in bank, parking areas and older homes on small lots. Larger, older and well-maintained homes on small lots are located to the east. Commercial uses in converted residences, banks and some residences are located to the south. Plaintiffs operate a general merchandise retail business in a one-story building on the northerly side of Main Street.
On the easterly 8.17 acres, most of which is zoned R-4A, the developer proposes to build two residential towers containing 670 dwelling units. The north tower with 420 units would be 36 stories and exceed the R-4A zone's 35 feet maximum height restriction by 316.8 feet. The south tower, with 250 units in 26 stories would exceed the height restrictions by 221.8 feet. The residential project would exceed the zone's 40 per cent land coverage limitation by 8.8 per cent. The residential towers and ancillary health club also require use variances.
On the westerly 7.5 acres zoned C-1, the developer proposes to construct 608,000 square feet of office and retail space in two structures: a seven story north building and a 13 story south building. Although no use variances are required, the commercial project deviates substantially from certain bulk and dimensional requirements.
The project requires vacation of Hoyt Avenue and the realignment of Hudson Street which would be widened from 33 feet to 105 feet.
Consistent with the great scale and complexity of the proposed development, the Board's resolution of approval is 64 pages. The Board "accepted as fact" the testimony of the developer's design and planning professionals including Malcolm Kasler, the developer's planning consultant. In the mid-1970's Kasler, then an employee of a municipal planning and consulting firm, participated in the preparation of Fort Lee's 1974 Master Plan and zoning ordinance. Kasler testified, as described in the Board's resolution, that

*254 the zoning that was provided under the R-4A classification was a holding action; that there is no R-4A zone in the Borough, other than for this tract and one other; that the R-4A zone was set up on the basis of either correcting conditions that were imminent as hazardous or where it was clear that the development of the site would not function without some corrective activity; ... that the intent of the Master Plan of 1974 was to create a holding action and was a temporary action on the part of the Borough in order to correct deficiencies in the area.
The resolution quoted a pertinent statement from the Master Plan:
To retain the one and one half block area bounded by Main Street, Hudson Street, South Marginal Road and Central Road for low density residential use unless and until specific traffic improvements are made in the area including the completion of the one-way street system, the widening and relocation of Hudson Street and other traffic improvement in the area.
The Board also "accepted as fact" the testimony of John Collazuol, Fort Lee's construction official and zoning officer. According to the resolution, Collazuol testified that the Borough's original intent was to rezone the area for high-rise uses but "that the conclusion was to leave the zones as they were so that an Applicant would have to come before the Board and the Board itself would have stringent control over what would be proposed ...; that the Borough wanted some control over what was going to be built on the site and thereby the Borough left the site in a zone which was not consistent with the area...."
Consistent with this theme, the Board found as two of the special reasons required for a use variance under N.J.S.A. 40:55D-70d.:
(a) The inappropriateness of the subject premises for its zoned use, especially considering the proposed development is consistent with the recommendations of the Borough's Master Plan. That the subject premises are located partially in the R-4A zone and the C-1 zone. That the Borough retained the premises in such zones so as to have control as to what would or could be built on the site.
....
(m) A significant portion of the subject premises is in zone R-4A, which permits one-and two-family dwellings. That such use is incompatible with the area surrounding the subject premises and that the use of the site for such purposes is not consistent with the Master Plan.
*255 The power to zone is vested in the local governing body. N.J.S.A. 40:55D-62. The board of adjustment is empowered to grant variances, N.J.S.A. 40:55D-70c. and d., but it may not, in the guise of a variance proceeding, usurp "the legislative power reserved to the governing body of the municipality to amend or revise the plan...." Leimann v. Bd. of Adj., Cranford, 9 N.J. 336, 340, 88 A.2d 337 (1952). The Municipal Land Use Law, L. 1975, c. 291, eliminated the mandated role of the governing body in granting use variances, thereby enhancing the need for boards of adjustment to adhere strictly to their limited role in land use administration. See Medici v. BPR Co., 107 N.J. 1, 20, 526 A.2d 109 (1987); Tp. of Dover v. Bd. of Adj. Tp. of Dover, 158 N.J. Super. 401, 408, 386 A.2d 421 (App.Div. 1978). In Tp. of Dover, we discussed criteria for determining when a variance grant constitutes an impermissible exercise of the zoning power and described the basic inquiry in such a case as "whether the impact of the requested variance will be to substantially alter the character of the district as that character has been prescribed by the zoning ordinances." Id. at 412-413, 386 A.2d 421.
Recently, in Chesterbrooke Limited Partnership v. Planning Bd. of Tp. of Chester, 237 N.J. Super. 118, 567 A.2d 221 (App.Div. 1989), we overturned the grant of a so-called flexible c. variance by a planning board. N.J.S.A. 40:55D-70c(2). The variance permitted the developer to deviate from a five-acre lot size requirement by engaging in lot averaging though the governing body had not granted that authority by ordinance pursuant to N.J.S.A. 40:55D-40b. Although the opinion in Chesterbrooke advanced a variety of reasons for setting aside the variance, prominent among them was the planning board's lack of authority to utilize the c(2) variance power to rezone a 467-acre tract.
In the present case we reverse because the use variance granted to allow the construction of high-density residential towers in a district zoned for two-family detached homes *256 was dependent on a finding that the tract was inappropriately zoned. Thus, the board of adjustment blatantly arrogated to itself the power to reject existing zoning and to substitute its idea of an appropriate zone plan. No board of adjustment has that power. Kaufmann v. Planning Bd. for Warren Tp., 110 N.J. 551, 564, 542 A.2d 457 (1988) ("the board is not free to grant variances from existing requirements just because it disagrees with those requirements"). No governing body can effect a de facto grant of the power to zone to a board of adjustment through the intentional adoption of inappropriate zoning regulations. PRB Enterprises, Inc. v. South Brunswick, 105 N.J. 1, 7, 518 A.2d 1099 (1987) (governing body may not delegate to planning board the power to determine permitted uses). The remedy for inappropriate zoning is legislative or judicial action. Lumund v. Bd. of Adj., Bor. of Rutherford, 4 N.J. 577, 583, 73 A.2d 545 (1950); see AMG Associates v. Tp. of Springfield, 65 N.J. 101, 109-110 n. 3, 319 A.2d 705 (1974); accord In Re Michener's Appeal, 382 Pa. 401, 407-08, 115 A.2d 367, 371 (1955); Ward v. Zoning Bd. of Appeals of Hartford, 153 Conn. 141, 145-46, 215 A.2d 104, 107 (1965).
Our second ground for reversal, not dependent upon a board's determination that the zoning is inadvertently or intentionally incorrect, is the inappropriate application of the variance power to alter radically an entire zone district. See Chesterbrooke Limited Partnership, supra; Tp. of Dover, supra.
The mischief is dual. The power to grant bulk and use variances, N.J.S.A. 40:55D-70c. and d.(1), is carefully circumscribed. It is limited to adjusting the zoning impact on specific pieces of property in individual cases for special reasons. "[I]f the difficulty is common to other lands in the neighborhood so that the application of the ordinance is general rather than particular," a variance may not be granted. Lumund, supra, 4 N.J. at 583, 73 A.2d 545. Application of the variance power to convert an entire low density two-family zone into a high density residential tower district exceeded the board's statutory *257 authority whether or not the existing zoning was inappropriate. The board effected a de facto rezoning of the entire district, thereby exercising a power delegated to the governing body. Cf. Leimann, supra (variance permitting the construction of 140 garden apartment units on 9 1/2 acres zoned for single-family detached houses exceeded board's authority); Chesterbrooke Limited Partnership, supra; Tp. of Dover, supra.
The Law Division's judgment is reversed. In light of the interdependence of the residential and commercial phases of the project, as presented to the board of adjustment, all the variances are vacated.
*258 
*259 
NOTES
[1] Apparently the property was cleared in the 1970's in preparation for a project which was never built.