961 A.2d 743 (2008)
404 N.J. Super. 295
Larry PRICE, Plaintiff-Appellant,
v.
STRATEGIC CAPITAL PARTNERS, LLC, and Union City Zoning Board of Adjustment, Defendants-Respondents.
DOCKET NO. A-2494-07T2.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 2008.
Decided December 16, 2008.
*744 Larry Price, appellant, argued the cause pro se.
Steven R. Tombalakian, Newark, argued the cause for respondent Strategic Capital Partners (Sills Cummis & Gross, P.C., attorneys; Mr. Tombalakian, on the brief).
Leon B. Piechta, West Orange, argued the cause for respondent Union City Zoning Board of Adjustment (O'Donnell & Piechta, attorneys, join in the brief of respondent Strategic Capital Partners).
Before Judges STERN, PAYNE and WAUGH.
The opinion of the court was delivered by
WAUGH, J.S.C. (temporarily assigned).
Plaintiff Larry Price appeals the dismissal of his action in lieu of prerogative writs challenging the grant of a density variance with respect to the construction of an eighteen-story, multi-family residential building in the City of Union City. We reverse and remand for further consideration by the Board.

I
Defendant Strategic Capital Partners, LLC (Strategic Capital) is the owner of a tract of land located at 1410-1416 Manhattan Avenue in Union City. The tract is designated as Block 185, Lots 12, 14, and 15, and is located in the Multi-Family Residential Zoning District (R-MF zone) and the Steep Slope Overlay Zoning District (SSOD zone).
Strategic Capital seeks to construct a luxury high-rise residential building on the property, following the demolition of the existing two-story masonry building and other improvements currently on the site. The proposed eighteen-story building would provide ninety-eight parking spaces in an internal parking garage located on the first five floors and ninety, one- and two-bedroom residential units on the remaining thirteen floors.
Strategic Capital applied for the necessary approvals from defendant Union City Zoning Board of Adjustment (Board). Because the property is located in the SSOD zone, the proposed building would ordinarily be limited to thirty residential units. Strategic Capital applied for a density variance, pursuant to N.J.S.A. 40:55D-70(d)(5), seeking to treble the permitted density. The height of the proposed building, eighteen stories, is permitted in the R-MF zone and not prohibited in the SSOD zone. The density variance ultimately granted by the Board is the subject of Price's appeal.
On January 18, 2007, the Board held a public hearing on the application. Strategic Capital presented testimony from four professionals: (1) a registered architect; (2) a professional civil engineer; (3) a professional traffic engineer; and (4) a professional planner. Additional testimony was provided by a professional planner who serves as the Board's planning consultant.
The architect described the existing building and the architecture of the proposed residential building. The civil engineer testified that, because the proposed residential building would not adversely affect the municipal water supply or sewer system, the ninety-unit density would have no greater adverse effect on the surrounding properties than a building providing only thirty units.
The traffic engineer testified that the proposed residential building would not significantly increase traffic in the area, based upon a traffic study performed at the intersections on both ends of the project site. He also explained the availability of public transportation to and from *745 the proposed residential building and the adequacy of the proposed parking. He concluded that the proposed ninety-unit building would have no greater impact on traffic generation or level of traffic service than would a thirty-unit building.
The professional planner testified in support of the density variance required for the project. In addition, he confirmed that the property is located in the R-MF zone, where high-rise structures are a permitted use.
Various neighbors and others testified at the hearing. Some voiced support for the application, generally expressing the view that it would be a benefit to Union City and would help improve the Manhattan Avenue neighborhood. Others expressed objections to the proposal, focusing on the size of the structure; the method for calculating density within the SSOD zone;[1] and the Board's authority to grant any density variances within the SSOD zone.
The Board approved the application by a unanimous vote at its January 18, 2007, hearing. The approval was memorialized in a resolution adopted on February 8, 2007, which reached the following relevant conclusions:
a. The Project is a permitted use in the R-MF Zone and the Steep Slope Overlay Zone.
b. The Application meets all of the bulk requirements of the R-MF Zone and the Steep Slope Overlay Zone, with the exception of the maximum permitted density.
c. The Project could actually have been taller and larger than proposed in the Application and would have still complied with all of the bulk and use requirements of the R-MF Zone and the Steep Slope Overlay Zone.
d. Regardless of whether the maximum allowable density for the Property is 7, 20, 30 or 70 residential units, the Board, in determining whether or not to grant the density variance, must determine whether the Applicant has proved that:
(i) the Property remains suitable for the Project at the increased density,
(ii) the variance promotes one or more of the purposes of zoning set forth in the MLUL [Municipal Land Use Law],
(iii) the variance does not substantially impair the intent [or] purpose of the City Zone Plan and Zoning Ordinance, and
(iv) the variance does not substantially impair the public good.
e. Ordinance § 18-5.4.i, which prohibits the Board's granting of a density variance from the requirements of the Steep Slope Ordinance, is a provision in conflict with the MLUL; as demonstrated by New Jersey case law, including [Lawrence M.] Krain [Associates, Inc.] v. [Mayor of] Maple Shade, 185 N.J.Super. 336, 448 A.2d 522 (Law Div.1982).
f. The Property is currently underutilized and unsightly.
g. The Project would enhance the aesthetic appearance of the Property and the surrounding neighborhood through development of an otherwise underdeveloped and unsightly property with an aesthetically pleasing luxury high-rise building.
h. The Project will not be constructed on the Palisades cliff face.

*746 i. The increased number of residential units in the building will not affect firefighting access to the building because:
(i) the building size would be no different regardless of the density of the building, and
(ii) the floor plans allow adequate access for fire fighters.
j. The project will not change the existing levels of traffic service at the intersections in the area of the Property and likewise will not adversely impact on traffic safety.
k. These levels of service are good levels of service which are all level of service C or better.
1. The Project will not adversely affect water or sewer capacity in the City or the area surrounding the Property because:
(i) United Water, the water provider for the Property, has issued a "will serve" letter for the Project, and
(ii) the North Hudson Sewerage Authority, the sewer provider for the Property, has issued a "will serve" letter for the Project.
m. Based on a. through [l.] above, the Property remains suitable for the Project, notwithstanding that the Project has a density of 90 units.
n. Based on a. through m. above, the Board's granting of the variance will not impair the purposes of the City of Union City Zoning Ordinance or Master Plan. The Master Plan encourages: 1) the preservation and enhancement of neighborhoods by programming and coordinating their improvements on a neighborhood basis rather than at random and 2) the assisting and encouraging of private developers in their contemplated housing developments. The proposed density of 90 units allows the construction of a first-rate high-rise luxury residential building in a prime area of the City. In addition, the proposed density also allows for the preservation of the Palisades cliff face.
o. Based on a. through m. above, the Board's granting of the density variance will not create a substantial detriment to the public good.
p. Accordingly, the Applicant has met the standards of Grubbs v. [Slothower, 389 N.J.Super. 377, 913 A.2d 137 (App. Div.2007),] and is entitled to the requested density variance.
q. Based on a. through m. above, the de minimis RSIS [Residential Site Improvement Standard] waivers will not interfere with the safety or functionality of the parking deck.
r. Other than the requested density variance and de minimis waivers, the Application complies with the City Zoning, Site Plan and Subdivision Ordinances and is thus entitled to preliminary and final major site plan and subdivision approval.
Price filed the present action in lieu of prerogative writs, challenging the Board's action. A trial was held on November 2, 2007. On November 8, 2007, the trial judge upheld the Board's action in an oral opinion, and entered an order dismissing Price's complaint. This appeal followed.

II
On appeal, Price argues that the Board acted improperly because: (1) Section 18-5.4i of the Union City zoning ordinance prohibits the Board from granting any density variance in the SSOD zone; (2) the Board lacked authority to act under N.J.S.A. 40:55D-70(d) because that statute is designed to afford relief from zoning requirements in "particular cases" and not to allow rezoning by variance; (3) there were insufficient special reasons to warrant a grant of a density variance for the *747 property; and (4) the variance substantially impaired the purpose of the zoning plan and zoning ordinance. It is our understanding that Price does not challenge the Board's specific factual determinations that the proposed building would not overburden the district in terms of traffic, sewage, or water usage.
We apply the same standard of review that was recently summarized in Grubbs v. Slothower, 389 N.J.Super. 377, 382-83, 913 A.2d 137 (App.Div.2007), as follows:
We begin our review of the trial court's decision by recognizing the standards that guide our consideration. "When reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J.Super. 552, 561[, 849 A.2d 1117] (App.Div.2004). Because of its "peculiar knowledge of local conditions," the Board's factual findings are entitled to substantial deference and are presumed to be valid. Burbridge v. Mine Hill Twp., 117 N.J. 376, 385, 568 A.2d 527 (1990) (quoting Medici [v. BPR Co.], 107 N.J. [1,] 23[, 526 A.2d 109] [(1987)]); see also Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296[, 212 A.2d 153] (1965). The Board's conclusions of law are subject to de novo review. Wyzykowski v. Rizas, 132 N.J. 509, 518[, 626 A.2d 406] (1993); Adams v. DelMonte, 309 N.J.Super. 572, 583[, 707 A.2d 1061] (App.Div.1998). However, "although we construe the governing ordinance de novo, we recognize the board's knowledge of local circumstances and accord deference to its interpretation." Fallone Props., supra, 369 N.J.Super. at 562[, 849 A.2d 1117].

A
Initially, we reject Price's argument that the Board was prohibited from granting the density variance by Section 18-5.4i of the Union City zoning ordinance, which purports to prohibit the Board from granting any variances with respect to the density provisions of the SSOD zone ordinance. That section provides: "Notwithstanding the foregoing, the Planning Board or Board of Adjustment shall not have jurisdiction to grant density greater than that permitted by Section 18-5.4e of this subsection." The trial judge correctly concluded that the provision is unenforceable because it conflicts with N.J.S.A. 40:55D-70(d)(5), which generally provides that a board of adjustment "shall have the power ... [i]n particular cases for special reasons, [to] grant a variance to allow departure from regulations pursuant to article 8 of this act to permit: [among other things] (5) an increase in the permitted density as defined in [N.J.S.A.] 40:55D-4."[2]
The trial judge correctly relied upon Lawrence M. Krain Associates, Inc. v. Mayor of Maple Shade, 185 N.J.Super. 336, 341, 448 A.2d 522 (Law Div.1982), for the proposition that a municipal ordinance cannot limit the authority conferred on zoning boards of adjustment by statutes such as N.J.S.A. 40:55D-70(d)(5). While Duffcon Concrete Products, Inc. v. Borough of Cresskill, 1 N.J. 509, 515-16, 64 A.2d 347 (1949), another case relied upon by the trial judge, is not exactly on point and concerns different statutes, its holding that "[o]nce the board of adjustment is *748 provided for in the zoning ordinance, its powers stem directly from the statute ..., and may not in any way be circumscribed, altered or extended by the municipal governing body" is nevertheless applicable to the case before us.

B
N.J.S.A. 40:55D-70(d)(5) permits a zoning board of adjustment to grant density variances only in "particular cases" and only for "special reasons." The overall premise of Price's appeal is that the Board's action in this case did not just address a "particular case," but rather a common problem in the SSOD zone. Consequently, he argues, the Board was essentially engaged in rezoning by variance, which the Board is not authorized to do. See Victor Recchia Residential Constr., Inc. v. Zoning Bd. of Adjustment of Cedar Grove, 338 N.J.Super. 242, 253-54, 768 A.2d 803 (App.Div.2001) ("In short, the Zoning Board may not rezone by variance.").
Price contends that the density problem underlying this case, i.e., that it is not economical to build a low-density high rise in the SSOD zone, is not unique to the tract owned by Strategic Capital, but is a common problem facing property owners and developers of property in the SSOD zone. As such, he contends, it cannot be remedied by the issuance of variances. See Feiler v. Ft. Lee Bd. of Adjustment, 240 N.J.Super. 250, 256, 573 A.2d 175 (App.Div.1990) ("`[I]f the difficulty is common to other lands in the neighborhood so that the application of the ordinance is general rather than particular,' a variance may not be granted." (quoting Lumund v. Bd. of Adjustment of Rutherford, 4 N.J. 577, 583, 73 A.2d 545 (1950) (alteration in original))), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991).
The factual basis for Price's position is supported by the record. Frank Minervini, Strategic Capital's architect, gave the following testimony before the Board:
What is allowed here, based on the calculations that we did, based on the site configuration and topography, is 30 units.
There are other projects that this Board is aware of that had been approved further down Manhattan [Avenue].
When this owner came to us, his intention was for us to design and ultimately build a building that could be beautiful, could be built and the apartments could be sold.
So, we think that this building achieves that, as opposed to the other projects that have been approved. And one of the ways it does that is by having a density that is more than the allowed, but still providing a building which is much less sizable than is allowed.
....
This is what we are proposing. An 18 story building, 188 feet. Our gross residential area here is 161,802 square feet.
What is allowed, according to the Ordinance, is a 22 story high building, 230 feet, with an allowable gross residential area of 182,302 square feet.
So, as we are proposing more units than allowed, we are also, with that, proposing a building that is much smaller than would be allowed.
And what this allowed for in our case are units that are, as I've already described, sized right for this local market, and are sellable.
This will, we believe, allow the building to be built.
....
Each of the residential floors has seven units. Four of those are one bedroom *749 units, ranging from 793 square feet to 879 square feet. The remaining three are two bedroom units, ranging from 1,065 square feet to 1,246 square feet.
These numbers aren't arbitrary. We actually designed the building for this ratio, because this is what the market wants. And we were trying to reach as many people as possible, so you could afford, possibly, a smaller one bedroom unit, at 1,046, or maybe you can afford a larger two bedroom unit at 1,246 square feet.
So, the intention here is to provide units that are of the proper size. And I say that in direct comparison to the buildings that were approved further down the street, and will never be built.[3]
The trial judge also recognized that, "[w]ithout the variance relief," Strategic Capital "would only be allowed to construct extremely large units for which there is no current market in Union City."
Price also challenges the Board's findings with respect to "special reasons." In Grubbs, supra, we addressed the issue of "special reasons" in the context of an application for a density variance:
Since special reasons supporting a particular variance request "must be tailored" to the purpose served by the restriction in the ordinance, Grasso [v. Borough of Spring Lake Heights, 375 N.J.Super.41,] 52[, 866 A.2d 988] [(App.Div.2004)], we examine the purpose of restricting density in a particular zone. The MLUL explicitly recognizes the regulation of the density of development as a general purpose of zoning that contributes to "the well-being of persons, neighborhoods, communities and regions and preservation of the environment." N.J.S.A. 40:55D-2(e). Density restrictions, in the residential context, and FAR [Floor Area Ratio] restrictions, in the commercial setting, both serve to limit the intensity of the use of the land to be developed. Commercial Realty[ & Res. Corp. v. First Atl. Prop. Co.], 122 N.J. [546,] 561[, 585 A.2d 928] [(1991)]; see also Cox, [New Jersey Zoning and Land Use Administration] § 7-7.2 at 215 [(2006)].
Special reasons are those that promote the purposes of zoning as set forth in N.J.S.A. 40:55D-2. Burbridge, supra, 117 N.J. at 386-87[, 568 A.2d 527]; Medici, supra, 107 N.J. at 10, 18[, 526 A.2d 109]. Though not expressly stated in the MLUL, the preservation of the character of a neighborhood or property values in that neighborhood have also been recognized as legitimate purposes of zoning. Home Builders League of S. Jersey, Inc. v. Twp. of Berlin, 81 N.J. 127, 145[, 405 A.2d 381] (1979). A successful applicant for a density variance therefore must show that despite the proposed increase in density above the zone's restrictions, and, thus, the increased intensity in the use of the site, the project nonetheless served one or more of the purposes of zoning and was consistent with the overall goals of the MLUL.
For example, it might be shown that the project promoted a more desirable *750 visual environment through development of otherwise underdeveloped or vacant property, N.J.S.A. 40:55D-2(i); see also Burbridge, supra, 117 N.J. at 387-88[, 568 A.2d 527] (aesthetic improvement may support special reasons for variance in expansion of an existing non-conforming use), or, a successful applicant might demonstrate that the project's construction with the requested density variance better promotes the character of the neighborhood or better preserves property values in the adjacent community.
Likewise, in addressing the so-called negative criteria, the applicant would need to demonstrate that the increase in density would not have a more detrimental affect on the neighborhood than construction of the project in a manner consistent with the zone's restrictions. For example, the applicant might demonstrate that the increased proposed density was only minimally greater than the permitted density in the zone or in adjacent areas. Randolph Town Ctr. [Assocs., L.P. v. Twp. of Randolph, 324 N.J.Super.412,] 418[, 735 A.2d 1166] [(App.Div.1999)]. The applicant might show that it was unlikely that a minimal increase in density would create a "substantial detriment" to nearby properties. Yahnel v. Bd. of Adjustment of Jamesburg, 79 N.J.Super. 509, 519[, 192 A.2d 177] (App.Div.), certif. denied, 41 N.J. 116[, 195 A.2d 15] (1963).
Our discussion of how an applicant might sufficiently demonstrate the positive and negative criteria in a density variance application is purely illustrative. We do not mean to imply that in any particular situation, satisfactory proof of such matters should compel the zoning board of adjustment's approval of the requested variance. We respect the proper use of the authorized discretion accorded to any board to consider the proofs in any particular matter that comes before it. Kramer, supra, 45 N.J. at 296[, 212 A.2d 153].
[389 N.J.Super. at 389-90, 913 A.2d 137.]
The zoning ordinance, Rev. Ordinance § 18-5.4 at 1814-17 (Supp.1/89), describes the purpose of the SSOD zone as follows:
It is the purpose of the Section to establish special land use development controls for portions of the City of Union City in the vicinity of the Palisades cliffs in order to:
1. preserve and enhance the Palisades as a prime natural resource of importance to residents of Union City, Hudson County and the State of New Jersey;
2. protect persons and property from potentially hazardous conditions due to grades, slopes and geology in the vicinity of the Palisades cliffs;
3. preserve the views from the top of the cliffs as well [as] views of the cliffs themselves; [and]
4. encourage innovative design in development in the vicinity of the cliffs and the employment of appropriate natural resource management practices.
[Id. § 18-5.4a at 1814.]
Our attention has not been drawn to any more specific legislative history with respect to the precise purpose to be served by the SSOD zone's density restrictions, but we note that the issue of limited density was sufficiently important to the Union City Board of Commissioners when they drafted and adopted the ordinance that they sought, albeit improperly, to prohibit the Board from granting any density variances. At oral argument before us, Price suggested that the density restriction was intended to prevent the construction of "large buildings," so as preserve the views of, and from, the adjacent Palisades. While not supported by any legislative history, that suggestion does appear *751 to comport with the result of the density restriction, given the economics of the market as described above. If that was the reason for the density restriction, however, it is not clear why the SSOD zone ordinance does not also restrict height.
Price appropriately points to the circular nature of the Board's argument at trial that the granting of the density variance in this case, which trebles the density permitted in the SSOD zone, serves a positive purpose through "the establishment of appropriate population densities." In fact, as noted in the quotation from Grubbs set forth above, one of the purposes of the zoning statute is "[t]o promote the establishment of appropriate population densities and concentrations that will contribute to the well-being of persons, neighborhoods, communities and regions and preservation of the environment." N.J.S.A. 40:55D-2(e). Clearly, the Board of Commissioners was exercising that authority when it enacted an ordinance that called for relatively low density in the SSOD zone.
A zoning board is not permitted to correct deficiencies in the zoning plan by issuing variances, because such action "is tantamount to an usurpation of the legislative power reserved to the governing body of the municipality to amend or revise the plan." Leimann v. Bd. of Adjustment of Cranford, 9 N.J. 336, 340, 88 A.2d 337 (1952); see also Feiler, supra, 240 N.J.Super. at 255, 573 A.2d 175. In our view, a variance that permits the construction of a building with treble the permitted density in order to establish "appropriate population densities" has strayed into the forbidden area, absent a compelling explanation to the contrary.
In Grubbs, we discussed how an applicant might establish the negative criteria for a variance. We spoke in terms of density "only minimally greater" than permitted and "a minimal increase in density." Grubbs, supra, 389 N.J.Super. at 390, 913 A.2d 137. The trebling of density in a zone in which the governing ordinance actually sought to prevent any increase in project density can hardly be characterized as "minimal."

C
In light of all of the above, we are not satisfied that the Board's award of the density variance to Strategic Capital is supported by the present record. Consequently, we reverse the decision of the Law Division and remand the matter back to the Board for further consideration consistent with this opinion. The Board must first consider whether it is really dealing with (1) "a particular case" that can be resolved through the granting of a variance; or (2) a more general problem with the density requirement in the SSOD zone that must be addressed through a change in the ordinance itself. And, the Board must clearly articulate its reasons for reaching its conclusions in that regard.
In the event the Board concludes that it is appropriate to proceed through the issuance of a variance, it must then reanalyze the positive and negative criteria with particular focus on the purposes intended to be served by the SSOD zone's unique density requirements vis-á-vis the fact that the R-MF zone permits high-rise buildings. As we said in Grubbs, supra, "a particular variance request `must be tailored' to the purpose served by the restriction in the ordinance." 389 N.J.Super. at 389, 913 A.2d 137 (citation omitted).
The Board cannot rely on "the establishment of appropriate population densities" as a justification for its action, inasmuch as the density established by the Board of Commissioners in the SSOD zone ordinance is the legally established "appropriate" *752 population density for the zone. In addressing the positive and negative criteria under Grubbs, the Board must clearly articulate why such a significant departure from that established density does not impair the purposes of the SSOD zone. As noted above, Grubbs appeared to contemplate a relatively minor increase in density in discussing how the negative criteria could be satisfied. If the Board believes that a trebling of the density is appropriate, it must more clearly articulate its reasons.

III
In summary, we reverse the judgment entered by the Law Division and remand for further consideration by the Board consistent with this opinion. The Board should give the applicant, Strategic Capital, time to consider whether it wishes to proceed with the current application, amend or modify the application, or await a possible revision of the Union City zoning laws, which we were informed at oral argument is currently under consideration.
Reversed and remanded.
NOTES
[1] Union City's planner verified that Strategic Capital's SSOD zone density calculations were in compliance with the applicable ordinance. Price challenged those calculations before the Board and in the Law Division, but has not raised that issue on appeal.
[2] The statute contains an exception, not relevant here, as follows: "except as applied to the required lot area for a lot or lots for detached one or two dwelling unit buildings, which lot or lots are either an isolated undersized lot or lots resulting from a minor subdivision." N.J.S.A. 40:55D-70(d)(5).
[3] Although we do not know exactly what proposed buildings Minervini was referring to, we are aware of at least two such high-rise buildings in the SSOD zone that received building approval with conforming density. Price v. 1514-1516 Manhattan Ave. LLC, A-5340-05T3, 2007 WL 1804147 (App. Div. June 25, 2007) (twenty stories with twenty-eight units); Price v. Planning Bd. of Union City, A-1021-05T5, 2006 WL 2933842 (App.Div. Oct. 16, 2006) (twenty-one stories with thirty-two units). In both cases, Price had unsuccessfully challenged the method of calculating the density permitted. We were informed at oral argument that at least one of those buildings has not been built.