NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5110-14T3

HOWELL ASSOCIATES, L.L.C.,

 Plaintiff-Appellant,

v.

ZONING BOARD OF ADJUSTMENT
OF THE TOWNSHIP OF HOWELL,
TOWNSHIP COUNCIL OF THE
TOWNSHIP OF HOWELL, TOWNSHIP
OF HOWELL, LIS ENTERPRISES,
L.L.C., and LEONARD I. SOLONDZ
ENTERPRISES, L.L.C.,

 Defendants-Respondents.
_________________________________________

 Argued January 24, 2017 – Decided June 15, 2017

 Before Judges Messano and Guadagno.

 On appeal from the Superior Court of New
 Jersey, Law Division, Monmouth County, Docket
 No. L-1368-14.

 R.S. Gasiorowski argued the cause for
 appellant (Gasiorowski & Holobinko,
 attorneys; Mr. Gasiorowski, on the briefs).

 Gary T. Hall argued the cause for respondent
 Leonard I. Solondz Enterprises, L.L.C.
 (McCarter & English, L.L.P., attorneys; Mr.
 Hall, on the brief).
 Ronald J. Troppoli argued the cause for
 respondent Zoning Board of Adjustment of the
 Township of Howell (Law Offices of Ronald J.
 Troppoli, attorneys; Mr. Troppoli, on the
 brief).

PER CURIAM

 Plaintiff, Howell Associates, L.L.C., filed a ten-count

complaint in lieu of prerogative writs against defendants, the

Zoning Board of Adjustment of the Township of Howell (the Board),

the Township Council of the Township of Howell (the Council), the

Township of Howell (the Township), LIS Enterprises, L.L.C., and

Leonard I. Solondz Enterprises, L.L.C. (collectively, LIS).

Plaintiff challenged the Board's approval of LIS's development

application, which sought variances, design waivers and site plan

approval.

 The record before the Board established that LIS owns a multi-

acre parcel of land in the Township located at the southeast corner

of the Route 9 and Interstate 195 intersection (the Property).

LIS submitted a development application to the Board, seeking to

construct a four-story, 38,387 square-foot hotel that included 109

guest rooms, a 200-seat restaurant, a 400-seat conference center

and banquet facility. The Property is located in the HD-1 zone,

where permitted uses include restaurants and "entertainment uses,"

but not hotels, conference centers or banquet halls.

 2 A-5110-14T3
 The Property had been the subject of a prior application. At

the time of that submission, hotels were "conditional uses"

permitted in the zone. The proposed prior development included a

four-story hotel, along with a separate day care facility. In

2009, while the application was pending, the Township amended its

zoning regulations and removed hotels as a recognized conditional

use in the zone. The Board ultimately rejected the application.

 The Board held hearings on LIS's application over nine

sessions. Deliberations took place on November 25, 2013. We

explain below in detail the events of that evening's vote. On

December 9, 2013, the Board adopted a memorializing resolution

granting LIS the necessary approvals.

 Plaintiff filed a notice of appeal with the Council. The

Council held no hearings and took no action on plaintiff's appeal.

Pursuant to N.J.S.A. 40:55D-17(c), the Council's failure to act

within ninety-five days affirmed the Board's decision. Plaintiff

then filed its action in the Law Division.

 In two orders, dated December 23, 2014, the late Paul A.

Kapalko, J.S.C., denied plaintiff's request for partial summary

judgment on count three of the complaint, which alleged improper

conduct by the Board's chairman and collusion between the Board

and the Township's mayor, and granted partial summary judgment to

the Board on that count. The second order granted partial summary

 3 A-5110-14T3
judgment to LIS, dismissing counts eight, nine and ten of the

complaint.1 Judge Kapalko's February 6, 2015 order denied

plaintiff's motion for reconsideration of the dismissal of count

three. The judge's June 9, 2015 order affirmed the Board's actions

and dismissed the balance of plaintiff's complaint. This appeal

followed.

 I.

 We first address plaintiff's challenge to the vote taken by

the Board on November 25, 2013. After conclusion of all testimony,

the Board chairman, Stephen Meier, announced all nine Board members

and alternates were present and "[e]ligible voters." In his

closing statement, counsel for plaintiff alluded to comments made

by Meier during the proceedings regarding "conditions as to the

type of a hotel that is wanted" on the Property, and traffic and

parking designs "necessary in order to make this [application]

work." Counsel did not request then, or at any previous time,

that Meier recuse himself from the proceedings.

1
 Counts eight and nine of the complaint alleged that, as a result
of the chairman's conduct and collusion between LIS, the Board and
the township, the Council's failure to act was not an affirmance
of the Board's decision. Count ten alleged violation of 42
U.S.C.A. § 1983. On appeal, plaintiff has not asserted any
specific argument in its brief with respect to this order. As a
result, plaintiff has waived any challenge to the December 23,
2014 order dismissing counts eight, nine and ten of the complaint.
Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014).

 4 A-5110-14T3
 Nonetheless, before opening the matter for the Board's

consideration, Meier announced he was "going to disqualify"

himself, stating,

 I have put myself a number of times in this
 case as [counsel for plaintiff] brought up
 . . . . Rather than have something which you
 come back as a reason for appeal, we have
 alternates which can vote in my stead, which
 is . . . the best route to go at this point,
 not to complicate issues.

After some remarks from Board members, counsel for the Board

recommended the chairman call for a vote on LIS's application for

"a use variance, a height variance and preliminary site plan

approval."

 Board member Posch, an alternate, then made a motion to

approve the application. Board member Borrelli seconded the

motion. After a lengthy recitation of proposed factual findings

and reasons for supporting the application, Borrelli said, "I move

to grant the use and bulk variances and preliminary site approval."

Four other Board members voted in favor of the application; only

one Board member voted no. The Board's administrative officer did

not call upon Borelli specifically to cast a vote. She confirmed

Posch's vote was affirmative and reported the vote as "six yes

 5 A-5110-14T3
votes, [one] no vote."2 Plaintiff's counsel did not object to the

procedure nor seek clarification of the vote.

 Plaintiff moved for partial summary judgement before Judge

Kapalko, arguing Borelli never voted, and it was unclear whether

chairman Meier disqualified himself, in which case Posch's vote

as an alternate could be counted, or whether Meier simply

abstained, in which case Posch was not permitted to move the

resolution or vote. Plaintiff contended if Meier abstained,

Posch's vote did not count, Borrelli never voted, and LIS failed

to secure the five affirmative votes necessary to approve use or

height variances. See N.J.S.A. 40:55D-70(d). Alternatively,

plaintiff argued Meier's belated disqualification was the result

of his improper and hostile conduct during the proceedings,

including Meier's continued chairing of the meeting during the

vote, thus tainting the Board's decision.

 In opposing the motion and in support of its own motion for

summary judgment, the Board furnished certifications from Borrelli

and the Board's administrative officer. Collectively, they

verified that Borrelli intended to, and believed he had, voted in

the affirmative.

2
 The second Board alternate did not participate in the discussion
or vote.

 6 A-5110-14T3
 The Board also supplied Meier's deposition transcript, in

which the chairman stated he disqualified himself because of "quite

a number of arguments" he had with plaintiff's counsel during the

hearings, and because he "caused [LIS] a tremendous amount of

money by asking [it to] present a case much more involved than

they had intended." Meier said suggestions he made to certain

preliminary plans delayed LIS's presentation to the Board for more

than one year.

 Meier testified that the Board's attorney told him

disqualification was not necessary, but he did so nevertheless.

Despite disqualifying himself from the discussion and the vote,

Meier did not "pass[]the gavel" to the vice-chairman because he

did not think it was necessary and feared it would only delay the

vote until after the New Year.3

 In his thorough written opinion, citing Randolph v.

Brigantine Planning Board, 405 N.J. Super. 215, 232 (App. Div.

2009), Judge Kapalko noted that "[w]here a board member

participates in a proceeding from which he is later found to be

disqualified, the proceeding is void in its entirety." The judge

then cited appropriate case law and statutory law defining "when

an interest requires disqualification of a board member."

3
 Meier intended to, and apparently did, resign from the Board at
the end of the calendar year.

 7 A-5110-14T3
 Distinguishing several cases relied upon by plaintiff, Judge

Kapalko found

 there is no allegation . . . that Meier had
 any financial or personal interest in LIS and
 their application. Instead, [p]laintiff
 asserts that Meier should have been
 disqualified because his conduct at the
 hearing was so reprehensible that it 'tainted'
 the proceeding because he clearly had made up
 his mind prior to the vote. I am unable to
 find that the few references identified by
 [p]laintiff from the extensive record . . .
 rise to the level of conduct sufficient to
 merit disqualification.

Judge Kapalko further rejected plaintiff's assertion "that Meier

made 'prejudicial rulings' against [it] and in favor of LIS." The

judge concluded plaintiff failed to demonstrate "Meier had a

disqualifying 'conflict of interest' at the time that he was

participating in and running the meetings . . . or that he was

required to recuse himself from the proceedings."

 Judge Kapalko rejected plaintiff's assertion that Meier

actually voted, and concluded Meier's action "had the legal effect

of an abstention from voting in an attempt to avoid a subsequent

appeal of the decision." Citing N.J.S.A. 40:55D-69, the judge

concluded Meier's abstention meant, "Posch was not permitted to

vote in his place." Judge Kapalko also concluded that although

Borelli was not called upon during the roll call, he clearly

intended to and did vote for approval. The judge found further

 8 A-5110-14T3
support that Borelli "was under the belief that he was counted as

a 'yes' vote for purposes of the . . . [a]pplication" from the two

certifications supplementing the record before the Board, noting

plaintiff never objected to the supplementation. The December 23,

2014 order explicitly denied plaintiff's motion for partial

summary judgment on count three of the complaint and dismissed

count three.

 Plaintiff's motion for reconsideration was supported by

portions of the transcript from the November 25, 2013 Board

proceedings. It contended that based upon Judge Kapalko's

conclusion that Posch was an alternate, Posch had no authority to

move the resolution in the first instance.

 The judge relied upon N.J.S.A. 40:55D-69, which states:

"Alternate members may participate in all matters but may not vote

except in the absence or disqualification of a regular member.

Participation of alternate members shall not be deemed to increase

the size of the zoning board of adjustment established by ordinance

of the governing body . . . ." The judge concluded Posch's moving

the resolution for a vote was not the same as voting, but rather

was "merely . . . a procedural device in order to formally place

the subject of approval before the Board for final consideration

and discussion." Judge Kapalko entered the February 6, 2015 order

denying plaintiff's motion for reconsideration.

 9 A-5110-14T3
 Plaintiff argues the Board's voting procedure was fatally

flawed, did not result in the requisite five affirmative votes and

Judge Kapalko "improperly substituted [his] judgment for that of

[the] Board" chairman, using certifications filed in the

litigation to "'clarify' the record." We reject these arguments

and affirm substantially for the reasons expressed by Judge

Kapalko. We add only the following.

 "Under our common law, '[a] public official is disqualified

from participating in judicial or quasi-judicial proceedings in

which the official has a conflicting interest that may interfere

with the impartial performance of his duties as a member of the

public body.'" Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551

(2015) (quoting Wyzykowski v. Rizas, 132 N.J. 509, 523 (1993)).

Additionally, the Legislature essentially codified the Court's

holding in Wyzykowski by stating, "No member of the board of

adjustment shall be permitted to act on any matter in which he

has, either directly or indirectly, any personal or financial

interest." N.J.S.A. 40:55D-69.

 "A court's determination 'whether a particular interest is

sufficient to disqualify is necessarily a factual one and depends

upon the circumstances of the particular case.'" Grabowsky, supra,

221 N.J. at 554 (quoting Van Itallie v. Borough of Franklin Lakes,

28 N.J. 258, 268 (1958)). The record in this case is clear.

 10 A-5110-14T3
Plaintiff failed to establish Meier had any disqualifying interest

in the application. Moreover, plaintiff's citation to those very

limited portions of the record where Meier displayed a lack of

patience or decorum fail to prove any personal bias in favor of

the application, or that plaintiff suffered any prejudice. Lastly,

plaintiff never objected to the Board's procedure at the time of

the vote, never sought clarification and never objected to Judge

Kapalko's decision to consider the supplemental certifications.

We find no basis to reverse the orders dismissing count three of

plaintiff's complaint and denying the subsequent motion for

reconsideration.

 II.

 We next consider plaintiff's challenge to the Board's grant

of use and height variances. Pursuant to the Municipal Land Use

Law (MLUL), N.J.S.A. 40:55D-1 to -163, a zoning board of adjustment

may "grant a variance . . . to permit . . . a use . . . in a

district restricted against such use . . . or . . . a height of a

principal structure which exceeds by [ten] feet or [ten percent]

the maximum height permitted in the district." N.J.S.A. 40:55D-

70(d)(1) and (6). A variance may be granted "[i]n particular

cases for special reasons," the so-called "positive criteria," but

only if the applicant can also demonstrate "that such variance

. . . can be granted without substantial detriment to the public

 11 A-5110-14T3
good and will not substantially impair the intent and the purpose

of the zone plan and zoning ordinance," the so-called "negative

criteria." N.J.S.A. 40:55D-70(d); see also Price v. Himeji,

L.L.C., 214 N.J. 263, 285-86 (2013) (explaining the positive and

negative criteria).

 The Board's resolution summarized the testimony offered by

LIS, including the unsuccessful development proposals submitted

during the prior twenty-five years and attempts to address the

reasons for those rejections in the current application, as well

as the testimony of LIS's experts, and expressly stated the Board's

factual findings "were in substantial agreement with th[at]

testimony." In contrast, the Board cited specific reasons why it

was rejecting the expert testimony offered by plaintiff.

See Omnipoint Commc'n, Inc. v. Bd. of Adjustment, 337 N.J. Super.

398, 418 (App. Div. 2001) (recognizing Board's ability to accept

or reject any expert testimony presented).

 The Board found the Property was particularly suitable to the

"hotel/conference center/banquet facility use" because there was

need for such a facility in the Township; the Property's proximity

to two major highways "represent[ed] a particularly appropriate

location for this proposed use"; the proposed use would generate

less traffic that "retail or office uses permitted as of right in

the HD-1 zone"; the particular physical characteristics of the

 12 A-5110-14T3
Property "constrained" the amount of developable area; and all of

those factors "significantly distinguish[ed]" the property from

others in the HD-1 zone, which applied to much of the Route 9

corridor.

 The Board also found that LIS satisfied the "negative

criteria," because the Township's Master Plan continued to

recognize the need for a hotel; adjacent residents would be

"screened" from the development by a "significant wooded buffer";

and the project would not have adverse traffic consequences or

produce "any other impacts on the surrounding area."

 As it did before Judge Kapalko, plaintiff argues the Board's

grant of a use variance was arbitrary, capricious and unreasonable,

because the Board's action usurped the legislative power accorded

the Council, which had amended the zoning regulations in 2009 and

eliminated hotels as a conditional use in the zone. Plaintiff

also contends the banquet hall/conference center was not an

"accessory use" of the hotel, but rather a separate non-permitted

use that required its own use variance. Plaintiff further argues

the Board improperly granted a height variance. Judge Kapalko

rejected these arguments, as do we.

 We set forth some well-known principles. "Our standard of

review for the grant or denial of a variance is the same as that

applied by the Law Division." Advance at Branchburg II, L.L.C.

 13 A-5110-14T3
v. Twp. of Branchburg Bd. of Adjustment, 433 N.J. Super. 247, 252

(App. Div. 2013). "[Z]oning boards, 'because of their peculiar

knowledge of local conditions[,] must be allowed wide latitude in

the exercise of delegated discretion.'" Price, supra, 214 N.J.

at 284 (quoting Kramer v. Bd. of Adjustment, 45 N.J. 268, 296

(1965)). A zoning board's decision "enjoy[s] a presumption of

validity, and a court may not substitute its judgment for that of

the board unless there has been a clear abuse of discretion."

Ibid. (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment,

172 N.J. 75, 81 (2002)).

 While we accord substantial deference to the factual findings

of the Board, its conclusions of law are subject to de novo review.

Wyzykowski, supra, 132 N.J. at 518. Additionally, the level of

deference given to a board's decision to grant a variance is less

than the level of deference given for a denial of a variance.

Saddle Brook Realty, L.L.C. v. Twp. of Saddle Brook Zoning Bd. of

Adjustment, 388 N.J. Super. 67, 75 (App. Div. 2006) (citing Funeral

Home Mgmt., Inc. v. Basralian, 319 N.J. Super. 200, 208 (App. Div.

1999)). "In evaluating a challenge to the grant or denial of a

variance, the burden is on the challenging party to show that the

zoning board's decision was 'arbitrary, capricious, or

unreasonable.'" Price, supra, 214 N.J. at 284 (quoting Kramer,

supra, 45 N.J. at 296).

 14 A-5110-14T3
 Plaintiff argues the Township's decision in 2009 to remove

hotels as a permitted conditional use in the HN-1 zone demonstrates

the Board arrogated to itself the legislative power solely vested

in the Council by the MLUL. See Price, supra, 214 N.J. at 285

(noting a zoning board "may not, in the guise of a variance

proceeding, usurp the legislative power reserved to the governing

body of the municipality to amend or revise the [zoning] plan"

(alteration in original) (citations omitted) (quoting Feiler v.

Fort Lee Bd. of Adjustment, 240 N.J. Super. 250, 255 (App. Div.

1990)), certif. denied, 127 N.J. 325 (1991)). However, every

variance application, by definition, seeks a departure from the

zoning regulations. The "criteria for determining when a variance

grant constitutes an impermissible exercise of the zoning power

. . . [is] 'whether the impact of the requested variance will be

to substantially alter the character of the district as that

character has been prescribed by the zoning ordinances.'" Feiler,

supra, 240 N.J. Super. at 255 (emphasis added) (quoting Twp. of

Dover v. Bd. of Adjustment, 158 N.J. Super. 401, 412-13 (App. Div.

1978)).

 As Judge Kapalko noted in his comprehensive written decision,

LIS's planning expert testified that the Township's Master Plan,

last amended in 2010, continued to express the need for a full-

service hotel in the HD-1 zone, even though the 2009 amendment to

 15 A-5110-14T3
the zoning regulations deleted "hotels" as a conditional use in

the zone. Defendant's expert opined that this demonstrated the

application was not at all detrimental to the Master Plan. In

other words, the Board's decision to grant a use variance did not

"shatter[]" or "wholly nullify" Howell's zoning scheme. Leimann

v. Bd. of Adjustment, 9 N.J. 336, 342 (1952). Moreover, there was

ample testimony regarding the overall character of the Route 9

corridor, which included many commercial and retail uses

consistent with LIS's proposal.

 Plaintiff further argues the Board's findings regarding the

positive and negative criteria were conclusory and not otherwise

supported by credible evidence. We disagree.

 The positive criteria requires proof of "special reasons" for

the grant of a variance, a term undefined by the MLUL, but

interpreted as "tak[ing] its definition and meaning from the

general purposes of the zoning laws." Price, supra, 214 N.J. at

285 (quoting Burbridge v. Twp. of Mine Hill, 117 N.J. 376, 386

(1990)). "Special reasons" may exist "where the use would serve

the general welfare because the proposed site is particularly

suitable for the proposed use." Nuckel v. Borough of Little Ferry

Planning Bd., 208 N.J. 95, 102 (2011) (quoting Saddle Brook Realty,

L.L.C., supra, 388 N.J. Super. at 76 (citation omitted). "[I]n the

context of the specific parcel, it means that strict adherence to

 16 A-5110-14T3
the established zoning requirements would be less beneficial to

the general welfare." Price, supra, 214 N.J. at 287 (citing

Kramer, supra, 45 N.J. at 290-91). "[T]he particularly suitable

standard has always called for an analysis that is inherently

site-specific." Id. at 288.

 In this case, the Board conducted a "site-specific"

evaluation of the evidence regarding the positive criteria and

made multiple findings, relying extensively on the testimony of

LIS's planning expert. It adequately explained why the Project's

parcel of land, as opposed to other parcels within the HN-1 zone,

made it particularly suitable for the use. In this regard, the

Board's findings deserve our deference.

 As to the negative criteria, the applicant must

 demonstrate, in accordance with the enhanced
 quality of proof, both that the variance "can
 be granted without substantial detriment to
 the public good" and that it "will not
 substantially impair the intent and the
 purpose of the zone plan and zoning
 ordinance[.]" The showing required to satisfy
 the first of the negative criteria focuses on
 the effect that granting the variance would
 have on the surrounding properties. The proof
 required for the second of the negative
 criteria must reconcile the grant of the
 variance for the specific project at the
 designated site with the municipality's
 contrary determination about the permitted
 uses as expressed through its zoning
 ordinance.

 17 A-5110-14T3
 [Id. at 286 (citations omitted) (quoting
 N.J.S.A. 40:55D-70).]

Here, the Board specifically found that the development would not

have any negative impacts on the surrounding community, both in

terms of increased traffic and visual aesthetics. For reasons

already discussed, citing the Master Plan's recommendation for a

full-service hotel, the Board concluded the grant of this

particular use variance did not undermine the general zoning

scheme.

 Plaintiff argues that because a hotel was not a permitted use

in the zone, a conference center and banquet hall could not be

accessory uses under Howell's zoning regulations, which limited

accessory uses to permitted uses. Alternatively, it contends that

even if the Board properly granted the use variance for the hotel,

the conference center and banquet hall are not recognized ancillary

uses, and, as a result, the Board permitted three separate uses

on one parcel in violation of the zoning regulations.

 As Judge Kapalko recognized, the issue posed a question of

law to which he need not defer to the Board's interpretation.

However, he concluded, as do we, that "the record clearly shows

that the . . . Board considered the issue of whether this

[a]pplication would require one or more use variances, and . . .

determined that the proposal required only one, given its

 18 A-5110-14T3
interpretation of what constitute[d] a full-service hotel." We

agree with the judge's assessment of the record.

 Contrary to plaintiff's contentions, LIS's proofs repeatedly

emphasized the unitary nature of the application, the fact that

the conference center and banquet hall were physically connected

to the hotel, and the justification for having such a facility,

as opposed to a structure that only provided lodging. The Board

specifically found the application was for a single use and

conditioned its approval on a single operator controlling the

facility, either directly or through sub-leases. These factual

findings are entitled to our deference, and, seen in that light,

the legal conclusion follows that only one use variance was

necessary.

 Lastly, plaintiff argues there was insufficient evidence to

support the Board's grant of a height variance. We again disagree.

 "[S]pecial reasons necessary to establish a height variance

must be tailored to the purpose for imposing height restrictions

in the zoning ordinance." Grasso v. Borough of Spring Lake

Heights, 375 N.J. Super. 41, 52 (App. Div. 2004). "[T]he board

can, as part of granting a use variance, consider the other

requested variances as ancillary to the principal relief being

sought." Price, supra, 214 N.J. at 300.

 19 A-5110-14T3
 Here, the project proposed a maximum height of fifty-four

feet, as opposed to forty-five feet permitted in the zone. LIS's

planning expert explained that the extra height was necessary to

accommodate the number of hotel rooms, and that, in turn, was

necessary to attract a first-class operator for the hotel. He

explained that the increase in height would not negatively affect

the surrounding community, and was necessary given the particular

shape of the Property. The Board's resolution specifically

incorporated this testimony in its findings. We cannot conclude

the Board's grant of a height variance was arbitrary, capricious

or unreasonable.

 We affirm Judge Kapalko's December 23, 2014 order granting

partial summary judgment, and the February 6, 2015 order denying

reconsideration. Additional we affirm the judge's June 9, 2015

order that dismissed plaintiff's complaint.4

 Affirmed.

4
 Plaintiff's final point on appeal, i.e., the Board's
memorializing resolution was "conclusionary and deficient," lacks
sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

 20 A-5110-14T3